SEDGWICK, DETERT, MORAN & ARNOLD LLP
REBECCA A. HULL  Bar No. 99802
NICOLE O. SNYDER  Bar No. 250636
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
METROPOLITAN LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VALLEY HEIGHTS, INC., a California corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, and DOES 1 through 20, inclusive,<br><br>           Defendant. | CASE NO. C 08-02388 JF<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:      August 8, 2008<br>Time:     9:00 a.m.<br>Crtrm.:    3<br>Judge:    Hon. Jeremy Fogel |

### I. INTRODUCTION

Defendant Metropolitan Life Insurance Company ("MetLife") has moved to dismiss plaintiff's complaint, on the ground that it fails to state a claim under either state or federal law. The motion should be granted.

MetLife's motion demonstrates, first, that the claim plaintiff has attempted to bring is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Second, even if the claim were not preempted by ERISA, the complaint does not allege (and, in light of the currently filed pleading, cannot be amended to allege) facts that, if proved, could establish that plaintiff is entitled to payment.   As such, even if analyzed under state law, the complaint fails to state a claim against MetLife for failure to pay the benefits to plaintiff.

Plaintiff's attempt to oppose MetLife's motion is unavailing. First, plaintiff argues that MetLife supposedly has not shown that on the facts as pled, ERISA applies to the benefits sought by plaintiff. Plaintiff argues that state law therefore has not been shown to be preempted, but it is incorrect, for the reasons discussed below.

Moreover, even if the complaint is analyzed under state law, it states no claim. MetLife's motion shows (and plaintiff, by its silence, concedes) that the complaint <u>on its face</u> establishes that <u>plaintiff was not the beneficiary</u> and that in any event, the benefits already were paid. As such, plaintiff's bare allegation that it "has not been paid" fails to state a claim, regardless of the applicable body of law. Since this defect is fatal to plaintiff's claim under either state or federal law, MetLife's motion should be granted and the complaint should be dismissed, with prejudice.[1]

## II. ARGUMENT AND LEGAL AUTHORITY

### A. Allegations of the Complaint

The complaint expressly alleges that BMA, MetLife's predecessor-in-interest, executed and delivered to plaintiff the group life insurance policy under which payment is sought, on or about November 1, 1991, and that Gaylord Dwight Chilcote was an insured under that policy. (Cpt. ¶ 6.) The complaint alleges that Chilcote died on or about November 17, 1998, and conclusorily asserts that plaintiff was entitled to receive $100,000 in benefits upon presentation of proof that Chilcote died while covered under the policy. (Cpt. ¶ 7.) The complaint further shows, however, in Exhibit C, that payment of the policy benefit was made on December 15, 1998.

---

[1] Plaintiff suggests that it should be granted leave to amend, supposedly because MetLife does not dispute "the existence of the Policy or its obligation to make payment." *See* Plaintiff's Opposition ["Opp."], 2:2-3. Plaintiff is wrong. First, MetLife's failure to dispute "the existence of the Policy" has no bearing on whether plaintiff has stated a claim with regard to the fact that the benefits were not paid to plaintiff. Second, plaintiff's own pleading shows that MetLife has, in fact, disputed "its obligation to make payment." As the attachments to the complaint set forth, MetLife on May 23, 2006, issued a letter in response to the claim that is attached to the complaint (the nonpayment of which is averred to be the basis for plaintiff's suit, although that that claim does <u>not</u> seek payment to plaintiff), in which MetLife *denied liability for payment* on the ground that the benefits were paid, in 1998. Third, this argument misses the mark, given that a Rule 12(b)(6) motion is directed to the sufficiency of the pleading, not the merits of the case attempted to be put forward. The issue here is whether, *on the face of the complaint*, plaintiff has stated a claim – which it has not.

Thus, complaint does not allege facts that, if proved, would establish that plaintiff was on the date of Chilcote's death the proper beneficiary of his life insurance coverage, or that any benefits remain due and owing with regard to his death. For example, the claim documents that are attached to the complaint as exhibits, and that supposedly show that benefits are owed to plaintiff, *do not seek a payment to plaintiff but direct MetLife to pay the benefits to one Richard Murphy*. Likewise, the plan documents attached to the complaint do not provide for payment to an employer/plan sponsor as a default beneficiary, and plaintiff has attached no document to the complaint showing that it was the intended beneficiary under a designation by Chilcote, the deceased employee.[2] In short, there are no facts alleged in the complaint or its attachments under which plaintiff is or could have been entitled to any part of the benefits.

Moreover, the complaint and its attachment show that the benefits in issue are part of an ERISA-regulated employee benefit plan. Plaintiff has attached to the complaint, as Exhibit A, a copy of an employee benefit disclosure form, personalized for Chilcote. It is noteworthy that this document (a copy of which obviously is in plaintiff's possession now, even *ten years* after Chilcote's death) shows that at the time of issuance the parties to the insurance contract (plaintiff as the plan sponsor and policyholder, and BMA as the insurer of the benefits) expressly acknowledged (in the "Statement of ERISA rights") that ERISA regulated the life insurance program and controlled the rights of employees/participants and the duties of plaintiff under the program. Thus, plaintiff both represented to BMA *at the time*, through its contract, that ERISA controlled the relationship between the insurance program and employees (Cpt. Ex. A, p. 25.), and also made that same representation to the employees who were eligible to participate in the program (*id.*).[3]

---

[2] The plan documents attached to the complaint also show that plaintiff – the employer – is the entity through which claims are submitted for payment. Given that the benefits were paid in 1998, this presumably means that *plaintiff* submitted the claim that resulted in the payment – and now seeks what it necessarily knows is a duplicate payment (or, given that the 2006 claim forms attached to the complaint seek payment to someone other than plaintiff, despite prior payment of the benefits in 1998 that the payment now sought potentially would be a triplicate payment).

[3] This inference necessarily arises from the fact that the personalized statement of Chilcote's rights as a participant in the plan necessarily would have been issued before his death, and from the fact that the document on its face was one directed to the participants/employees (since it

**III.    LEGAL AUTHORITY AND ARGUMENT**

**A.    Plaintiff's Opposition**

Plaintiff's position appears to be that its boilerplate allegations of entitlement to payment of the plan benefits are the only thing this Court may consider in deciding whether MetLife's motion is well founded.  Thus, plaintiff's opposition simply ignores the exhibits to its complaint and MetLife's discussion of the impact of those exhibits, which demonstrate that plaintiff has no claim under state or federal law due to both the omission of critical factual allegations from the body of the complaint, and the content of the exhibits to the complaint – which together nullify the claim attempted to be stated.

**B.    Plaintiff's Arguments Are Unfounded**

Plaintiff's election in its opposition to ignore the totality of its pleading and focus only on the artfully worded allegations in the body of the complaint appears to stem from its hope that the Court will ignore the evidence plaintiff put into the record via the exhibits.  The law is otherwise. In particular, the United States Supreme Court has held that a Rule 12(b)(6) motion should be granted where a pleading consists of vague factual allegations that on their face are not plausible. *See Bell Atlantic Corp. v. Twombly*, __ U.S. __,  127 L.Ed.2d 929, 127 S.Ct. 1955 (2007).[4]  As the *Twombly* Court articulated the issue, the question on a motion to dismiss is whether the pleading alleges "enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*., 127 S.Ct. 1974.  Here, the complaint does not allege facts stating even a "conceivable" claim, much less a "plausible" one, and it is facially insufficient under federal pleading standards.

Moreover, the exhibits to the complaint rule out the possibility of a amendment that could withstand a further motion under Federal Rule of Civil Procedure 12(b)(6) or, indeed, a motion

---

consistently refers to the employee/participant as "you" and refers to the employer as the "policyholder").

[4] MetLife suggests that this test also is an excellent yardstick by which to measure plaintiff's attempt to confuse the issues by suggesting that perhaps ERISA does not apply to its claim, based upon completely speculative and unsupported "what if" arguments.

under Federal Rule of Civil Procedure 11. First, Federal Rule of Civil Procedure 10(c) provides, as black letter law, "A copy of a written instrument that is an exhibit to a pleading *is a part of the pleading for all purposes*." F. R. Civ. Pro. 10(c) [emphasis added]. Case law similarly holds:

> When ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint. . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. . . . Because [certain contracts] are attached as exhibits to [the] complaint, we may consider their terms in ruling on the motion to dismiss. And while we accept well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff . . . to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls. . . . The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material. . . . A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.

*Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) [citations and internal punctuation omitted].

In short, plaintiff has not pled – and its exhibits make it clear that, in light of Rule 11, it cannot amend to plead – that (1) plaintiff is the beneficiary of the plan benefits (either under an express designation or by operation of the plan's terms), and/or (2) plaintiff made a timely (or, indeed, any) claim for the plan benefits.[5] The exhibits to the complaint set forth a claim by an individual (one Richard Murphy, who is described in the claim – submitted on his behalf *by plaintiff* – as the beneficiary of Chilcote), not a claim by plaintiff Valley Heights, Inc. As discussed in MetLife's moving papers, the exhibits to the complaint also establish that (1) the employee/participant has the right to name a beneficiary, (2) Richard Murphy was paid the

---

[5] Although MetLife has not raised such issues at this point, it also is plain that, should the case proceed, the claim attempted to be brought by plaintiff will be subject to dismissal on the merits for many reasons. For instance, the claim is stale. The complaint alleges that the group life insurance policy was "executed and delivered" to plaintiff in 1991. Cpt. ¶ 6. Plaintiff, if it believed itself entitled to the plan benefits, was required to make its claim within 90 days of the loss (the death) [Ex. A at p. 13], and sue within three years after the date by which proof of loss was required to be provided. Ex. A, p. 19. Claims for benefits must be presented to the insurer by plaintiff, the policyholder [Ex. A, p. 13], meaning that since Exhibit C to the complaint shows that the benefits were paid in December 1998, *plaintiff* presented the proof of loss on behalf of the person who was paid. In paragraph 9 of its complaint, plaintiff tries to imply that its very late suit – almost *ten years* after the death of the participant – should be excused, claiming that supposedly plaintiff "did not discover the existence" of the policy until 2006 – even though in paragraph 6 it admits that the policy was "delivered" to it in 1991 and even though it presumably was plaintiff that presented the claim that was paid in 1998, as required under the plan terms.

benefits in December 1998 as Chilcote's beneficiary, and (3) even if Chilcote had not named any beneficiary at all, the default provision of the plan does not allow for the benefits to be paid to plaintiff, the employer/plan sponsor. Without ever discussing any of those points, plaintiff merely states repeatedly that it has pled in its complaint a bare allegation that it is "'entitled to receive' payment under the Policy" and that this is enough to defeat MetLife's motion. *See* Plaintiff's Opposition ("Opp."), at page 6 n.2.[6]

In addition, plaintiff attempts would have the Court simply ignore Exhibit A to the complaint – including the "Statement of ERISA Rights" that plaintiff disclosed to employees/participants covered by the insurance program. Plaintiff argues that federal law (the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*) does not govern its life insurance program. In so doing, plaintiff invites the Court to engage in unfounded speculation that this case purportedly could fall within a narrow exception to ERISA, although plaintiff made no motion for remand (presumably because it recognizes that diversity jurisdiction would apply even if, contrary to fact, state law were not preempted by ERISA).

Aside from the explicit "statement of ERISA rights" that is part of the exhibits to the complaint, there is language in Exhibit A, in particular, that shows that ERISA applies to the life insurance program under which the benefits are sought. Plaintiff asserts that MetLife has not *negated* the possibility that this is not an ERISA plan but in the circumstances, it is plaintiff's own

---

[6] Should this case be permitted to proceed, an additional merits-related defense that will be presented arises from the fact of the prior payment. Plaintiff's suit for payment to it necessarily is brought as a claimant with interests adverse to the interests of Richard Murphy (whose duplicate claim plaintiff presented in 2006, as shown in the complaint). Under California law, a payment made to an apparently proper beneficiary without notice of an adverse claim *completely exonerates the insurer from a later adverse claim.* MetLife anticipates that this Court would, either under state law principles or as a matter of federal common law under ERISA, find that the 1998 payment to the designated beneficiary, made without notice of an adverse claim by plaintiff, requires under principles of equity that MetLife be protected from plaintiff's belated claim for the same benefits. *See* California Insurance Code § 10172 [". . . when the proceeds of, or payments under, a life insurance policy become payable and the insurer makes payment thereof in accordance with the terms of the policy . . . that payment shall fully discharge the insurer from all claims under the policy unless, before that payment is made, the insurer has received, at its home office, written notice by or on behalf of some other person that the other person claims to be entitled to that payment or some interest in the policy"]. If plaintiff tries to avoid this problem by claiming that it did in fact present its adverse claim prior to the December 1998 payment to Richard Murphy, it thereby will conclusively prove that its claim is barred by applicable statutes of limitation, including but not limited to the 39-month period in Exhibit A to the complaint.

1  exhibits that establish applicability of ERISA. For instance, in Exhibit A at page 1, it is disclosed
2  to the employees/participants that Valley Heights, Inc. is "the policyholder," and is authorized to
3  act on behalf of all persons insured under the policy. Page 5 of Exhibit A discloses that only
4  "active full-time employees who have completed 90 days of employment" are eligible to become
5  participants and be covered by the insurance program, and page 11 provides certain rights at the
6  termination of employment. Page 13 requires plaintiff, the policyholder, to handle the submission
7  of claims to the insurer, and page 25 provides that plaintiff (which is the plan sponsor, and
8  therefore by law is the plan administrator, *see* 29 U.S.C. § 1003(16)(A)) must furnish
9  employees/participants with certain documents and information upon request. Consistent with
10 these provisions, when the belated claim attached to the complaint was submitted, it was plaintiff
11 – the plan sponsor and administrator – that assembled and submitted the paperwork. *See* Ex. B.

12    Plaintiff offers a lengthy generic discussion of the ERISA "safe harbor" rule – which,
13 under 29 C.F.R. § 2510.3-1 applies only when, *inter alia*, "[t]he sole function of the employer . . .
14 with respect to the program is . . . to permit the insurance company to publicize the program to
15 employees . . ., to collect premiums through payroll deductions . . . and to remit them to the
16 insurance company." *Id*. [emphasis added]. On the face of the complaint, however, it is readily
17 apparent that whatever else may have been the case, those were not the "sole" functions of
18 plaintiff. Rather, plaintiff acted for all persons insured under the policy, and plaintiff was
19 responsible for – and demonstrably carried out its responsibility for – initial claim handling
20 including submission of claim paperwork. Thus, plaintiff's speculative argument for avoidance of
21 ERISA is answered by its own pleadings, in the negative.

22    Finally, as MetLife's motion amply demonstrated – and plaintiff's opposition fails even to
23 discuss – if plaintiff's complaint is analyzed under state law, MetLife's motion nevertheless should
24 be granted, and the complaint should be dismissed with prejudice. The complaint alleges merely
25 that MetLife did not pay plaintiff $100,000 upon receiving proof of Chilcote's death. There is
26 nothing in the complaint to show or even to suggest that plaintiff was Chilcote's beneficiary on
27 the date of his death. Indeed, the claim documentation attached to the complaint expressly alleges
28 that the beneficiary was one Richard Murphy – and he was paid in December 1998, according to

Exhibit C to the complaint. The complaint taken as a whole does not meet the *Bell Atlantic Corp. v. Twombly* standard of plausibility, and MetLife's motion therefore should be granted.

### IV.     CONCLUSION

Plaintiff has alleged only a state law claim for breach of contract based upon MetLife's failure to make a payment to plaintiff with regard to the death of Gaylord Chilcote. MetLife has demonstrated that the claim is preempted, and plaintiff has failed to refute that showing.

Regardless of whether plaintiff's claim is analyzed under ERISA or under state law, however, the complaint must be dismissed because plaintiff has not alleged and cannot allege that it is the beneficiary. Accordingly, plaintiff has no standing to seek the benefits, and its complaint should be dismissed with prejudice.

DATED: July 25, 2008                    SEDGWICK, DETERT, MORAN & ARNOLD LLP


By:/s/ Rebecca A. Hull
   Rebecca A. Hull
   Attorneys for Defendant
   METROPOLITAN LIFE INSURANCE

-8-

REPLY MPA RE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM