**E-Filed 8/26/08**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VALLEY HEIGHTS, INC., a California Corporation,<br><br>                        Plaintiff,<br><br>        v.<br><br>METROPOLITAN LIFE INSURANCE, COMPANY; and, DOES 1-20,<br><br>                        Defendants. | Case Number C 08-2388 JF (HRL)<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND<br><br>[re: docket no. 10] |

Defendant Metropolitan Life Insurance Company ("MetLife") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the instant action for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion will be granted without leave to amend.

### I. BACKGROUND

Plaintiff Valley Heights, Inc. ("Valley Heights"), a corporation with its principal place of business in Santa Cruz County, California, asserts a claim for breach of contract against MetLife

---

[1] This disposition is not designated for publication in the official reports.

based upon MetLife's alleged failure to pay benefits under a life insurance policy ("the Policy"). On November 1, 1991, Valley Heights contracted with MetLife's predecessor-in-interest, Business Men's Assurance Company of America ("BMA"), to provide a group life insurance policy for Valley Heights' employees, including Gaylord Dwight Chilcote ("Chilcote"). Chilcote died on November 17, 1998 while covered by the BMA life insurance policy. According to a MetLife document attached to the complaint, death benefits were paid on December 15, 1998 to Richard Murphy ("Murphy"), Chilcote's partner and the designated beneficiary of the Policy. *See* Complt. Exh. C.   Although Murphy also is the owner of Valley Heights, he is not a party to this action.  Nonetheless, Valley Heights alleges that "under the terms of the Policy, Plaintiff [Valley Heights] became entitled to receive from BMA, and BMA became obligated to pay Plaintiff the sum of $100,000 after receiving proof that Chilcote died while covered under the Policy." Complt. at ¶ 7.

In 2000 MetLife acquired Valley Heights' group life insurance plan.  Valley Heights alleges in its complaint that it "did not discover the existence of the Policy until approximately April 2006," Complt. at ¶ 9, and that it did not submit a claim to request payment of Chilcote's policy benefits until May 5, 2006.[2]  On May 23, 2006, MetLife informed Valley Heights by letter that it already had paid the Policy benefits to Murphy in December 1998 and that it had discharged its liability with that payment.  Valley Heights responded to MetLife "indicating that it [Valley Heights] had not received payment of the proceeds under the Policy, and requested proof of payment." *Id.* at ¶ 11.  Because MetLife did not reply, Valley Heights sent three additional letters making the same request.

On March 24, 2008, Valley Heights filed suit in the Santa Cruz Superior Court alleging that MetLife breached the Policy "by failing to make payment in the sum of $100,000." *Id.* at ¶ 19.  The complaint does not allege that *Murphy* was improperly denied benefits; rather it alleges that *Valley Heights* is entitled to benefits from Chilcote's death and that these benefits have not

---

[2] The complaint actually alleges that Valley Heights submitted the claim forms on May 2, 2006.  However, the forms themselves (attached to the complaint) were signed on May 5, 2006, which the Court assumes is the correct date.

2

Case No. C 08-2388 JF (HRL)
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND
(JFEX1)

been paid. *Id*. at ¶ 15. The case was removed to this Court on May 9, 2008, and the instant motion was filed on May 22, 2008.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955 (2007) (internal citations omitted).

## III. DISCUSSION

The sole claim for relief asserted in the complaint is that MetLife breached the Policy by failing to pay benefits owed to Valley Heights after Chilcote's death in 1998. Complt. at ¶ 19.

### A.   ERISA Preemption

MetLife first argues that this action is subject to dismissal because Valley Heights' state law breach of contract claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Under ERISA's preemption clause, the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). As construed by the Supreme Court, the phrase "relates to" is to be "given its broad common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). ERISA's preemption clause is "deliberately expansive" and extends to common law tort and contract actions. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987); *see also Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985). "Even claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims arise from the

3

1  administration of such plans whether directly or indirectly." *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414, 415 (9th Cir. 1990) (citing *Ellenburg v. Brockway Inc.*, 763 F.2d 1091, 1095 (9th Cir. 1985)).

Here, the Court first must evaluate whether the Policy qualifies as an ERISA plan. The ERISA statute defines an "employee benefit plan" as a program "established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). Valley Heights argues that MetLife has failed to demonstrate as a matter of law that the Policy was "established or maintained" by Valley Heights. However, based upon its own allegations, it is apparent that Valley Heights did not merely purchase insurance on behalf of its employees, but rather continued to administer and actively monitor the plan. *See* Complt. at ¶¶ 6, 10-15. Valley Heights' opposition to the motion merely lists generic exceptions to ERISA without providing any reasoning as to why any of such exceptions should apply to this case. Accordingly, the Court concludes that the Policy at issue qualifies as an ERISA plan.

The Court next considers whether the present action sufficiently "relates to" the plan at issue to be subject to ERISA preemption. As noted above, Valley Heights alleges that it purchased the Policy and continued to manage the receipt of benefits pursuant to the plan. The sole issue in this action is whether MetLife has met its alleged obligations under the ERISA plan. Complt. at ¶ 19. The Policy itself devotes an entire page to an explanation of "ERISA Rights." Exhibit A at 25. Because the complaint itself explicitly references ERISA, addresses the payment of benefits under an ERISA plan and implicates the plan's administration, the Court concludes that the instant action is subject to ERISA preemption.

**B.     Leave to Amend**

Because MetLife argues that the instant motion should be granted without leave to amend, the Court also must consider whether there is any reasonable possibility that Valley Heights could plead an adequate ERISA claim. Though leave to amend ordinarily is granted with great liberality, it is apparent in this case that neither Valley Heights nor Murphy could assert a plausible claim under the *Bell Atlantic* standard.

4

### 1. Valley Heights

The Court concludes that there is no reasonable possibility that Valley Heights could assert facts from which a trier of fact could find that the corporation has a right to recover policy benefits for Chilcote's death. The Policy provides that "[t]he Insured's Benefit Amount will be paid according to the beneficiary designation and the contract provisions for such payment." Exhibit A at 13. The complaint itself establishes that Murphy, not Valley Heights, was the designated beneficiary of this Policy. Exhibit C; *see also* Complt. at ¶ 11 (stating that Exhibit C is "true and correct"). Valley Heights' counsel conceded at oral argument that Murphy was the sole designated beneficiary.

Because Valley Heights cannot recover as the designated beneficiary, the Policy would have to include an alternative method through which Valley Heights could recover Chilcote's benefits. The Policy provides that if no beneficiary is named or the name beneficiary does not survive the insured, benefits are paid to a surviving family member or to the executor of the decedent's estate. Exhibit A at 9 (listing default beneficiaries). Valley Heights does not qualify under either of these provisions. Even if Murphy was listed incorrectly as the beneficiary or as the executor of Chilcote's estate, the terms of the Policy discharge liability to the extent that benefits were paid incorrectly but in good faith. Exhibit A at 13.

### 2. Richard Murphy

At oral argument, Valley Heights stated that it could substitute Murphy as the plaintiff in this action if it were granted leave to amend. However, even if Murphy were a party to this action, he too would be barred from asserting a claim. The complaint alleges that Chilcote died on November 17, 1998. Complt. at ¶ 7. The documents attached to the complaint indicate that the policy's death benefit was paid to Murphy in December 1998. Even if Murphy were to allege that he never received payment, it is implausible that MetLife would have attempted to pay the benefit without a claim first having been made establishing that Chilcote had died. The complaint nonetheless alleges that Valley Heights did not become aware of the policy until 2006 and counsel asserted at oral argument that Murphy did not file a claim until 2006. However, the Policy requires that "written proof of loss," including a death certificate and completed claim

form, be submitted within ninety days of the insured's death. Exhibit A at 13.  A claim for benefits filed eight years after Chilcote's death would be barred by the terms of the policy itself.

Valley Heights claims that it (or Murphy) should be able to avoid this contractual time limitation because it "did not discover the existence of the Policy until approximately April 2006." *Id.* at ¶ 9. This allegation also is implausible. The complaint alleges that Valley Heights "executed" the Policy contract with BMA in 1991, and that a copy of the Policy was "delivered" to Valley Heights at that time. *Id.* at ¶ 7. Valley Heights obviously had to be aware of a contract to which it was a party.

If Murphy filed a claim in 1998 as the documents attached to the complaint suggest, leave to amend would be appropriate only if Murphy still could litigate the adequacy of that transaction under ERISA. "Because ERISA does not contain a specific statute of limitations, courts look to the most analogous state statute of limitations." *Johnson v. Georgia-Pacific Corp.*, 260 Fed. Appx. 994, 997 (9th Cir. 2007) (citing *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000)). The applicable statute of limitations for a written contract under California state law is four years. Cal. Civ. Pro. § 337. Thus the statute of limitations for any action regarding a 1998 transaction ran in December 2002.

For the foregoing reasons, the Court concludes that allowing Murphy to substitute for Valley Heights as the plaintiff in this action would serve no useful purpose. Accordingly, leave to amend will be denied.

**IV. ORDER**

MetLife's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

The Clerk of the Court shall enter judgment and close the file.

DATED: August 26, 2008

JEREMY FOGEL
United States District Judge

Case No. C 08-2388 JF (HRL)
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND
(JFEX1)

6

1 | This Order has been served upon the following persons:

2

3 | Michael Jin-Kon Cheng
*Pahl & McKay*
225 West Santa Clara Street, Suite 1500
4 | San Jose, CA 95113-1752

5 | Stephen Donald Pahl
*Pahl & Gosselin*
6 | Email: spahl@pahl-gosselin.com

7 | Servando R. Sandoval
*Pahl & Gosselin, APC*
8 | Email: ssandoval@pahl-mccay.com

9 | Nicole OBrien Snyder
*Sedgwick, Detert, Moran & Arnold*
10 | Email: nicole.snyder@sdma.com

11 | Rebecca A. Hull
*Sedgwick, Detert, Moran & Arnold LLP*
12 | Email: rebecca.hull@sdma.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

Case No. C 08-2388 JF (HRL)
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND
(JFEX1)